IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAPHAEL MOSES SPEARMAN, ) | |
| ) | Civil Action No. 14 - 1751 |
| Plaintiff, ) | |
| ) | District Judge Mark R. Hornak |
| v. ) | Magistrate Judge Lisa Pupo Lenihan |
| ) | |
| LIEUTENANT A.J. MORRIS and ) | ECF No. 17 |
| CORRECTIONAL OFFICER W. ) | |
| HOLLOWOOD, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that Defendants' Motion to Dismiss, which has been converted into a Motion for Summary Judgment (ECF No. 17) be granted for Plaintiff's failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act.

**II. REPORT**

Pending before the Court is a Motion to Dismiss that was filed by the Defendants on August 2, 2015 and subsequently converted into a Motion for Summary Judgment. (ECF No. 17.) The sole argument in support of dismissal is based on Plaintiff's failure to comply with the exhaustion requirement of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), which requires prisoners, as that term is defined in the statute, to exhaust their administrative remedies prior to filing suit under 42 U.S.C. § 1983 with respect to prison conditions. Specifically, the PLRA provides:

1

> No action shall be brought with respect to prison conditions under section 1983 of this title by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Id. The United States Supreme Court has held "that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes." Porter v. Nussle, 534 U.S. 516 (2002). Furthermore, exhaustion is mandatory and no case may be brought until the inmate-plaintiff has exhausted all available administrative remedies. *See* Booth v. Churner, 532 U.S. 731, 739 (2001). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies prior to filing the action. *See* Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").

The PLRA also mandates that inmates "properly" exhaust their administrative remedies before filing suit in federal court. Woodford v. Ngo, 548 U.S. 81, 93 (2006). Proper exhaustion requires the prisoner to identify the issue or claim and future defendant in the operative grievance or else the grievance is procedurally defective as to that issue, claim or future defendant. *See* Spruill v. Gillis, 372 F.3d 218, 234 (3d Cir. 2004). Additionally, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." Woodford, 548 U.S. at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Id. at 93 (quoting Porter, 534 U.S. at 525).

Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal." Id. at 83; *see also* Spruill, 372 F.3d at 228-29 (utilizing a procedural default analysis to reach the same conclusion). Courts have concluded

that inmates who fail to fully, or timely, complete the prison grievance process are barred from subsequently litigating claims in federal courts. *See*, *e.g.*, Booth, 206 F.3d 289; Bolla v. Strickland, 304 F. App'x 22 (3d Cir. 2008); Jetter v. Beard, 183 F. App'x 178 (3d Cir. 2006).

This broad rule favoring full exhaustion admits of one, narrowly defined exception. If the actions of prison officials directly caused the inmate's procedural default on a grievance, the inmate will not be held to strict compliance with this exhaustion requirement. *See* Camp v. Brennan, 219 F.3d 279 (3d Cir. 2000) (Section 1997e(a) only requires that prisoners exhaust such administrative remedies "as are available"). However, case law recognizes a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." Davis v. Warman, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will only be excused "under certain limited circumstances," Harris v. Armstrong, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate can defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." Davis, 49 F. App'x at 368; *see also* Brown v. Croak, 312 F.3d 109, 110 (3d Cir. 2002) (assuming that prisoner with failure to protect claim is entitled to rely on instruction by prison officials to wait for outcome of internal security investigation before filing grievance); Camp, 219 F.3d at 281 (exhaustion requirement met where Office of Professional Responsibility fully examined merits of excessive force claim and correctional officers impeded filing of grievance).

In this case, it is not disputed that Plaintiff filed two grievances on the matters alleged in his Complaint (Grievance Nos. 496046 and 497318). (ECF No. 17-2.) However, both of these grievances were "filed without action" at the final review stage because Plaintiff did not include

the necessary material with his appeal.[1] (ECF No. 17-2 at pp.6, 12.) Despite the opportunity to correct the deficiencies, and instructions on how to complete the appeal process, Plaintiff did not do so.

Plaintiff does not deny receiving what he calls the "action required sheet", which the Court assumes is the aforementioned "filed without action" form, but he alleges that after he received it he wrote to the "prison grievance officer" and asked "the central office staff not to dismiss [his] grievances due to direct contact." (ECF No. 22 at p.2.) He states that he "received a response saying that [he] needed to be more specific" about what grievance he was talking about and what exactly he needed. Id. This, in fact, appears to be memorialized in a "Request to Staff Member" form that Plaintiff sent to Tracy Shawley on May 28, 2014. (ECF No. 22-1 at p.13.) Plaintiff states that after he wrote to the prison grievance officer he received a notice of dismissal of his two grievances and therefore just assumed he completed the appeal process. (ECF No. 22 at p.2.)

Importantly, the Court notes that the form instructing Plaintiff on what to do to complete the appeal process is dated March 28, 2014, while his request to Tracy Shawley is dated May 28, 2014, two months later. Pursuant to the DOC grievance procedures, Plaintiff had only fifteen

---

[1] Within DC-ADM 804, the Inmate Grievance System Policy, the Pennsylvania Department of Corrections established a three-step Inmate Grievance System to provide inmates with an avenue to seek review of problems that may arise during the course of confinement. Pursuant to DC-ADM 804, after an attempt to resolve any problems informally, an inmate may submit a written grievance to the facility's Grievance Coordinator for initial review. This must occur within fifteen days after the events upon which the claims are based. Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. Within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. *See* Booth, 206 F.3d at 293 n.2 (outlining Pennsylvania's grievance review process); Ingram v. SCI Camp Hill, No. 08-23, 2010 U.S. Dist. LEXIS 127124, at *21-25 (M.D. Pa. Dec. 1, 2010) (same).

working days from March 28, 2014 to submit the missing materials to the SOIGA for final review, and he was informed that the failure to do so within that time period would result in dismissal of his appeal. This meant that Plaintiff had to submit his missing materials by April 18, 2014 in order to perfect a timely final appeal. He did not do so and there is nothing in his response to indicate that it was the direct actions of prison officials that prevented him from properly exhausting his administrative remedies. Therefore, his Complaint should be dismissed with prejudice.

### III. CONCLUSION

For the reasons set forth above, it is respectfully recommended that Defendants' Motion to Dismiss, which has been converted into a Motion for Summary Judgment (ECF No. 17) be granted for Plaintiff's failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act.

In accordance with the applicable provisions of the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B)&(C), and Rule 72.D.2 of the Local Rules of Court, Plaintiff shall have fourteen (14) days from the date of the service of this report and recommendation to file written objections thereto. Plaintiff's failure to file timely objections will constitute a waiver of his appellate rights.

DATED this 7th day of October, 2015.

/s/ Lisa Pupo Lenihan
Lisa Pupo Lenihan
United States Magistrate Judge

cc: Raphael Moses Spearman
    KK2947
    301 Institution Dr.
    Bellefonte, PA 16823